UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SETH B. MICHELS,

Plaintiff,

v.

Case No. 25-cv-1209-bhl

FRANK BISIGNANO, Commissioner of the Social Security Administration,

Defendant.

## DECISION AND ORDER

Plaintiff Seth Michels seeks review of the final decision of the Commissioner of the Social Security Administration, denying his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §405(g). For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

On April 19, 2021, Michels applied for disability insurance benefits alleging a disability onset date of July 10, 2020, when he was 31 years old. (ECF No. 6-3 at 16, 26; ECF No. 6-6 at 2.) After his claims were denied initially and on reconsideration, he requested a hearing before an administrative law judge (ALJ). (ECF No. 6-3 at 16.) The ALJ held a hearing on March 19, 2024 and heard testimony from Michels and a vocational expert. (*Id.*) The ALJ then issued a June 21, 2024 decision, following the five-step sequential evaluation of disability set forth in 20 C.F.R. §1404.1520(a). (*Id.* at 17.) He found that Michels had severe impairments and significant symptoms and was therefore limited to light work with additional restrictions. (*Id.* at 19, 21.) The ALJ also determined that Michels could perform a number of jobs that exist in significant numbers in the national economy, however, and was not disabled. (*Id.* at 27–28.) On June 10, 2025, the Appeals Council denied Michels's request for review of that decision. (*Id.* at 2–4.) Michels now seeks judicial review pursuant to 42 U.S.C. §405(g).

In his disability report on Form SSA-3368, Michels identified 22 conditions that he believed limited his ability to work. (ECF No. 6-7 at 3.) The ALJ condensed them to diffuse joint pain, fibromyalgia pain, Ehlers-Danlos syndrome, leg length disparity, joint hypermobility, hip disorders, hand and foot disorders, decreased sensation, balance issues, and ADHD. (ECF No. 6-3 at 21–22.) In a function report on Form SSA-3373, Michels alleged that the combination of impairments limited his ability to stand more than 30 minutes, walk more than 3/4 of mile, or work with a computer longer than 30–45 minutes. (ECF No. 6-7 at 45.) At the hearing, Michels testified to jaw, neck, back, bilateral shoulder, bilateral hand, right wrist, bilateral hip, bilateral knee, and bilateral ankle pain that had not resolved with treatment including multiple hip surgeries. (ECF No. 6-3 at 45–46.) Michels reported limited mobility, difficulty pushing and pulling, and the ability to stand only 15 minutes, walk a mile, and sit 30 minutes. (*Id.* at 54.) He also testified that ADHD, bipolar disorder, depression, and his mental health medication impacted his motivation, ability to concentrate and focus and complete tasks. (*Id.* at 54–55.)

The record includes a number of medical professionals' assessments of Michels and his conditions. His medical records were reviewed by state agency physicians, both of whom found that Michels could perform light work. (ECF No. 6-3 at 25 (citing ECF No. 6-4 at 2–5, 21–26).) On November 10, 2021, Michels underwent a mental consultative examination with Jess Frey, Psy.D. (ECF No. 6-3 at 24 (citing ECF No. 6-9 at 413–17.) Michels indicated his chief complaint was his "physical disability" including Ehlers-Danlos syndrome, tendonitis in both elbows, shoulders and hips, SI (sacroiliac) joint dysfunction, arthritis in his neck and herniated disks, bulging disks, and a torn labrum. (ECF No. 6-9 at 413.) Michels also told Dr. Frey that his daily activities included laundry, personal care, and driving, however, he noted he is in "quite a bit of pain." (*Id.* at 416.) In January 2023, Michels's primary care physician, Daniel Johnson, D.O., advised Michels to become a "bit more active" because doing so might help improve his pain "by keeping his flexibility and joint mobility more efficient." (ECF No. 6-12 at 29.) In August of 2023, Dr. Johnson noted that Michels's medication regimen had stabilized his Ehlers-Danlos syndrome and fibromyalgia, resulting in substantial pain reduction with no medication side effects. (*Id.* at 37–38.)

At step one of his analysis, the ALJ concluded that Michels had not engaged in substantial gainful activity since July 10, 2020, the alleged onset date. (ECF No. 6-3 at 18.) At step two, the ALJ found that Michels had severe impairments of Ehlers-Danlos syndrome, fibromyalgia,

degenerative disc disease, SI joint dysfunction, degenerative joint disease of the bilateral hips and shoulders, depression, bipolar disorder, and ADHD. (*Id.* at 19.) At step three, the ALJ determined that none of those impairments met or equaled any of the agency's listings of impairments. (*Id.*)

The ALJ then found that Michels had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §404.1567(b) except that Michels could frequently push/pull with bilateral upper extremities, occasionally climb ramps and stairs, climb ladders, ropes, or scaffolds, balance, stoop, kneel, crouch and crawl; occasionally reach overhead bilaterally, frequently handle and finger bilaterally, and should avoid concentrated exposure to hazards. (*Id.* at 21.) The ALJ further limited Michels to understanding, remembering and carrying out simple instructions and performing simple routine tasks in a position having only occasional changes and maintaining concentration, persistence, and pace for simple tasks in two-hour increments over the course of a normal workday and work week. (*Id.*) At step four, the ALJ found that Michels was unable to perform any past relevant work. (*Id.* at 26.) At step five, the ALJ found that there were a significant number of jobs in the national economy that Michels could perform and therefore determined that Michels was not disabled. (*Id.* at 27.)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053–54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that

is sufficient to allow [a reviewing court] to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review." *Id.* at 1054 (cleaned up) (citations omitted). In reviewing the record, the Court does not displace the ALJ's judgment by reweighing evidence, resolving evidentiary conflicts, or deciding questions of credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Judicial review is deferential and is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)). If substantial evidence supports the ALJ's disability determination, the decision must be affirmed, "even where reasonable minds might disagree about the outcome." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023).

## ANALYSIS

Michels alleges four primary errors in the ALJ's non-disability determination. First, Michels contends that the ALJ's step five finding—that there were a significant number of jobs in the national economy that Michels could still perform—conflicted with the Dictionary of Occupational Titles (DOT). (ECF No. 16 at 9–11.) Second, Michels argues that the ALJ failed to build a logical bridge between the evidence and his conclusion that Michels could maintain concentration, persistence and pace for simple tasks at two-hour increments over the course of a normal workday and work week. (*Id.* at 11–14.) Third, Michels contends that the ALJ's RFC limitations were not supported by substantial evidence because the ALJ failed to discuss several of Michels's symptoms and failed to consider evidence from Michels's health care providers. (*Id.* at 15–16.) Fourth, the ALJ failed to follow Social Security Ruling (SSR) 96-8p's requirement to consider limitations of restrictions imposed by the mechanics of treatment. (*Id.* at 16–18). Because none of these challenges supports a remand, the Commissioner's decision will be affirmed.

### I. Michels Forfeited Any Challenge to the Vocational Expert's Testimony By Failing To Object.

Michels complains that the ALJ failed to identify and obtain a reasonable explanation for conflicts between the vocational expert's testimony and the DOT. (ECF No. 16 at 9.) At the hearing, the ALJ asked the vocational expert to consider a hypothetical individual with Michels's age, education, and experience, and the ability to perform the full range of light work, which also included the limitation of occasional overhead reaching. (ECF No. 6-3 at 60.) The vocational expert testified that Michels's restrictions would not prevent the performance of a significant number of jobs in the national economy and responded with three representative jobs that such a

hypothetical individual could perform: cashier II (330,000 jobs), bench assembler (30,000 jobs), and cleaner/housekeeping (200,000 jobs). (*Id.* at 62.) The ALJ added the limitation that the person would be able to understand, remember, and carry out simple instructions, perform simple routine tasks with only occasional changes, and maintain concentration, persistence and pace for simple tasks in two-hour increments. (*Id.* at 63.) The vocational expert confirmed that the three identified jobs could still be performed. (*Id.*) The ALJ then asked the vocational expert whether his testimony was consistent with the DOT and the vocational expert responded "yes." (*Id.* at 64.) The vocational expert also stated that to the extent anything was inconsistent or not addressed in the DOT, his testimony was based on his "personal and professional experience," and that such professional experience also applied to his testimony about "overhead reaching as opposed to reaching in other directions." (*Id.*)

Michels argues that according to the DOT, each of the three jobs identified by the vocational expert requires frequent reaching and, because the ALJ restricted Michels to occasional overhead reaching, the vocational expert's testimony was flawed. (ECF No. 16 at 9.) As previously noted, the vocational expert specifically testified that any testimonial issue that was inconsistent with the DOT was based on his personal and professional experience, including overhead reaching as opposed to reaching in other directions. (ECF No. 6-3 at 64.) Accordingly, the vocational expert's testimony about overhead reaching, as related to the three identified positions, was based on his own personal and professional experience and not the requirements of the DOT. (*Id.*) Neither Michels nor his attorney asked any questions about the vocational expert's testimony regarding overhead reaching. (*Id.* at 64–66.) Although the Court notes that the vocational expert's testimony could have been more clear, the ALJ did not err in relying upon this testimony.

Regardless, Michels forfeited any challenge to the vocational expert's testimony by failing to object or ask any questions regarding the overhead reaching testimony. The Seventh Circuit has confirmed that "[a] claimant who fails to object at the hearing forfeits any challenge to the [vocational expert's] testimony." *Fetting v. Kijakazi*, 62 F.4th 332, 337–38 (7th Cir. 2023) ("When no one questions the [vocational expert's] foundations or reasoning, an ALJ is entitled to accept the [vocational expert's] conclusions."); *see also Leisgang v. Kijakazi,* 72 F.4th 216, 219–20 (7th Cir. 2023) ("Our case law is clear that this principle holds true in the Social Security context" that "a claimant must object to the [vocational expert's] testimony or otherwise indicate that the

testimony is unreliable during the administrative hearing (or after, in a posthearing brief) to preserve his objection."). The Seventh Circuit has further clarified that the objection must be specific to avoid forfeiture, a claimant must do more than make a general objection or vaguely question the vocational expert's methodology. *Fetting*, 62 F.4th at 338. In this case, Michels's counsel failed to timely object and challenge the vocational expert's testimony about the nature of the jobs available to Michels in the national economy. Michels has thus forfeited his arguments with respect to those jobs.

## II. The ALJ's Residual Functional Capacity is Supported by Substantial Evidence.

Michels next complains that the ALJ erred in concluding that he could maintain attention and concentration for two-hour segments due to his pain. (ECF No. 16 at 11–13.) Relatedly, he argues that the ALJ's RFC did not include sufficient concentration-based limitations to accommodate his pain or reasonably evaluate his fibromyalgia. (*Id.*) With regard to concentrating, persisting or maintaining pace, the ALJ found that Michels had a moderate limitation. (ECF No. 6-3 at 20.) The Seventh Circuit has explained that if an applicant is "moderately" limited, that does not mean he is performing "bad" or "inadequately," but it means he functions "fair" in that area. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) ("a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace."); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019) (affirming the ALJ's decision where the ALJ "specifically limited plaintiff to 'work requiring the exercise of only simple judgment,' a limitation that specifically accounts for [plaintiff's] concentration difficulties.") In crafting the RFC, the ALJ accommodated Michels's moderate limitations in concentration, persistence, and pace by restricting Michels to understanding, remembering, and carrying out simple instructions and performing simple routine tasks in a position having only occasional changes in two-hour increments over the course of a normal workday and work week.

The ALJ's limitation as to concentration, persistence and pace is supported by the record. The ALJ relied on the consultative examination of Dr. Frey who opined that Michels was moderately limited in his ability to concentrate, persist and maintain pace. (ECF No. 6-3 at 24.) State agency psychologist Kiela Bolden, Psy.D. found that Michels had mild limitations in the ability to understand, remember and apply information, interact with others, concentrate, persist, and maintain pace and adapt or manage oneself. (ECF No. 6-4 at 19–20.) The ALJ found Dr. Bolden's opinion not persuasive to the extent that it reflected no more than mild limitations in the

ability to concentrate, persist and maintain pace and adapt or manage oneself. (ECF No. 6-3 at 25.) He explained that Dr. Bolden had not adequately accounted for Michels's subjective statements or his anxious and depressed presentation, which the ALJ noted would likely impact his ability to concentrate and adapt to changes. (*Id.*) The ALJ found that Michels was able "to maintain concentration, persistence and pace for simple tasks in two hour increments, over the course of a normal workday and work week" given his "stable mental impairments, his admission that he is primarily impacted by physical pain, his ability to care for his children, drive[,] perform household chores, play video games, read, follow television programs, interact appropriately with others, and the mental status examinations that are primarily within normal limits with the exception of a few presentations as anxious and depressed[.]" (*Id.* at 24.) As previously noted, in crafting the RFC, the ALJ also limited Michels to simple instructions, simple tasks, and only occasional changes and also found that Michels could maintain concentration, persistence and pace for simple tasks in two-hour increments, over the course of a normal workday and work week. (*Id.* at 21.) Substantial evidence thus supports the ALJ's explanation of his RFC determination.

Michels further complains that the ALJ did not credit the opinion of April Riggs, APNP, in Riggs's March 4, 2024 mental residual functional capacity statement. (ECF No. 16 at 17.) Riggs opined that Michels's limited capacities to perform work within a schedule, maintain attendance and punctuality, and complete a normal workday and workweek each would preclude 15% or more of his work performance. (ECF No. 6-10 at 343–44.) The ALJ found this opinion to be of little persuasive value because "there is no evidence to support the degree of off-task behavior considering Ms. Riggs['] mental status examinations do not include an assessment of the claimant's concentration/focus [and] there is not support for the degree of absences." (ECF No. 6-3 at 26.) The ALJ's job is to weigh the evidence and to determine a claimant's functional capacity. *See* 20 C.F.R. §404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."); 20 C.F.R. §404.1520c(a) ("We will not defer or given any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). The ALJ is not required to rely on a medical opinion in determining a claimant's RFC. *See Schmidt v Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[T]he ALJ is not required to rely entirely on a particular

physician's opinion or choose between the opinions [of] any of the claimant's physicians."). Here, the record confirms that the ALJ evaluated evidence from multiple sources and noted that Michels's mental status examinations were primarily within normal limits with the exception of a few anxious and depressed presentations. (ECF No. 6-3 at 24.) As previously explained, it is the ALJ's job to evaluate the evidence and craft the RFC—the most a claimant can do in the workplace. Michels's arguments improperly invite the Court to reweigh the evidence and replace the ALJ's reasoning with its own.

**III. The ALJ Did Not Commit Reversible Error When Discussing the Evidence.**

Michels also argues that the ALJ's evaluation of Dr. Johnson's medical records was skewed and the ALJ ignored medical evidence from Michels's rheumatologist, neurologist, orthopedist, chiropractor and pain management specialist. (ECF No. 16 at 15–16.) Although remand is warranted if an ALJ fails to minimally discuss contrary evidence, the mere fact that Michels is able to identify medical evidence that could support additional restrictions is not enough to show reversible error. "[T]he presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). It is Michels's "burden to show that the ALJ's decision is not supported by substantial evidence," not that there is evidence from which the ALJ could have reached the opposite conclusion. *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014). Here, Michels fails to show that the evidence he cites compelled the ALJ to adopt additional RFC limitations. *Delong v. Saul*, 844 F. App'x 894, 900 (7th Cir 2021) ("But even if the record could support such limitations, there is nothing that compels them.").

Michels does not offer any opinion from the identified health care providers setting limits greater than those set by the ALJ's RFC. *See Gedatus*, 944 F.3d at 904. The only medical sources who assessed functional limitations concluded that Michels was capable of performing light work. (ECF No. 6-3 at 25 (citing ECF No. 6-4 at 2–5, 21–26).) An ALJ is not required to discuss every piece of evidence. *Pepper*, 712 F.3d at 363 ("[A]n ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence.") (citing *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009)). The ALJ noted that despite Michels's pain and limited mobility complaints, the longitudinal physical examinations findings indicated that Michels had a normal gait, was in no acute distress, appeared comfortable, and at times had full hip, spine, shoulder, finger, wrist, elbow range of motion and

normal appearing extremities, intact bilateral lower extremity sensation, 5/5 motor strength, intact sensation and no edema. (ECF No. 6-3 at 22–23 (citing ECF No. 6-8 at 204; ECF No. 6-12 at 236, 242, 251, 259, 264).) The ALJ further noted medical records demonstrating 14/18 tender points, tenderness of the bilateral SI joints, restricted lumbar spine and left hip range of motion, additional tenderness, and decreased sensation in the bilateral feet and legs. (*Id.* (citations omitted).) The ALJ determined that Michels was capable of work activity at the light exertional level based on the recommendations of Dr. Johnson that he would benefit from increased activity, the normal physical examination findings, Michels's admission that medication improved his pain, as well as the evidence that Michels was able tend to his personal care, care for his children, drive them back and forth from school, drive his son to karate class, perform some household chores, and play videogames. (*Id.* at 23.) Given the overall record, the ALJ reasonably concluded that Michels could perform light work and augmented the state agency physicians' findings with postural, manipulative, and environmental limitations and simple, routine tasks and occasional changes. (*Id.* at 21–24.) The ALJ has therefore "said enough here to support [his] decision and permit meaningful . . . review" which is all that is required to meet "the most minimal of articulation requirements" to which the ALJ is subject. *Thorlton v. King*, 127 F.4th 1078, 1083 (7th Cir. 2025) (quoting *Warnell*, 97 F.4th at 1053).

## IV. The ALJ's Decision Not To Address Absences Related to Medical Appointments Was Not Reversible Error.

Michels's final argument is that the ALJ failed to follow SSR 96-8p by not considering the restrictions imposed by the "mechanics of treatment" or, in other words, the nearly 300 doctors' appointments attended by Michels between July 10, 2020 and the end of 2023. (ECF No. 16 at 1–3, 16–17.) Social Security Ruling (SSR) 96-8p states that an "RFC assessment must be based on *all* of the relevant evidence in the case record . . . including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Numerosity of medical appointments alone cannot establish disability. *See Hoppa v. Colvin*, No. 12-cv-847-bbc, 2013 WL 5874639, at *5 (W.D. Wis. Oct 31, 2013) ("If the 'sheer number of medical visits' were sufficient on its own, claimants could manufacture their own disabilities simply by going to the doctor as often as possible for any or no reason."). The Seventh Circuit has rejected Michels's argument when a claimant fails to demonstrate that "his appointments would require him to miss

a full day of work or that he could not schedule his appointments outside of working hours." *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir 2018); *Rabdeau v. Kijakazi,* No. 22-CV-674, 2023 WL 5672596, at *9 (E.D. Wis. Sept. 1, 2023), *aff'd* 155 F.4th 908 (7th Cir. 2025) (explaining that the claimant's "medical visits are generally scheduled in advance, and [the claimant] points to no evidence demonstrating that her treatment appointments must occur during work hours and cannot be arranged around a traditional work schedule"); *Kolosick v. O'Malley*, No. 23-C-1050, 2024 WL 4053034, at *3 (E.D. Wis. Sept. 5, 2024) ("To the extent Plaintiff claims his treatment would have resulted in absenteeism, Plaintiff has not pointed to 'anything in the record to suggest that his appointments would require him to miss a full day of work or that he could not schedule his appointments outside of working hours.'").

Michels does not identify any evidence for how many days he would miss work due to medical appointments. Contrary to Michels's implication, the burden is not on the ALJ to prove why he was not disabled. Michels's brief nitpicks the ALJ's decision and erroneously places the burden on the ALJ to disprove Michels's allegations of disability. In conclusion, the AL did not commit reversible error in failing to address the question whether Michels's medical appointments rendered him unable to work.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on September 22, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge